**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

CALVIN S. BERRY,

    Plaintiff,

vs.                                            CASE NO. 3:09-cv-885-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER AND OPINION

This case is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's claims for Social Security disability insurance benefits (DIB) and supplemental security income (SSI) disability payments. 42 U.S.C. § 405(g). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #21, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #23, D's Brief). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated December 1, 2009 (Doc. #15). The Commissioner has filed the transcript of the administrative record (hereinafter referred to as "Tr." followed by the appropriate page number). Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the written record.

For the reasons set out herein, the decision of the Commissioner is **REVERSED** and

the case is **REMANDED** for additional proceedings consistent with this Order and Opinion.

## PROCEDURAL HISTORY

In the instant action, Plaintiff protectively filed applications for DIB and SSI on September 25, 2006 (Tr. 96-100, 101-104, 116), in which he asserts the onset date of disability was May 11, 2006. Plaintiff alleged he was unable to work due to his back problems, including chronic back pain and numbness that causes him to fall (Tr. 120). After being denied initially and upon reconsideration (Tr. 46-49), Plaintiff requested a hearing, which was held on November 10, 2008 in Jacksonville, Florida before Administrative Law Judge (ALJ) Robert Droker (Tr. 29-45). During the hearing, Plaintiff appeared and testified in person, as did vocational expert (VE) Donna Mancini. Plaintiff was represented during the underlying administrative phase of the proceedings by Marcella A. Taylor, Esq. (Tr. 62-63, 94). On December 9, 2008, ALJ Droker issued a hearing decision denying Plaintiff's claim (Tr. 17-28). Shortly thereafter, Plaintiff retained new counsel, Chantal J. Harrington, Esq., (Tr. 10, 13). The Appeals Council (AC) denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (*see* Tr. 1-5).

The instant action was filed in federal court on August 25, 2009 (Doc. #1, complaint). Plaintiff continues to be represented by Chantal J. Harrington, Esq., (*see* Doc. #1). The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND THE STANDARD OF REVIEW

Plaintiff may be entitled to disability benefits if he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. § 404.1505.[1] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520. Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The ALJ's decision dated December 9, 2009, denied Plaintiff's claim (Tr. 17-28). The ALJ found that Plaintiff meets the insured status requirements through December 31, 2012 (Tr. 22).[2] At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of May 11, 2006 (Tr. 22). At step two, the ALJ found Plaintiff's disorders of the spine, affective disorder, coronary artery disease, history of peripheral neuropathy and morbid obesity were severe impairments (Tr. 22). At step three, the ALJ found these impairments did not meet or equal, either singly or in combination with

---

[1] Unless otherwise specified, all references to 20 C.F.R. will be to the 2010 edition.

[2] As Plaintiff's remained insured for DIB throughout the operative period of time, only his DIB application is pertinent to the Court's findings and the ALJ's decision.

any other impairment, any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4 (Tr. 22).

The ALJ assessed Plaintiff retained the residual functional capacity (RFC) to perform a limited range of sedentary work (Tr. 24).  At step four, the ALJ determined that Plaintiff could not perform the past relevant work, which was identified by the VE as that of an industrial truck (forklift) mechanic and a shipping clerk (Tr. 26).  However, at step five, based in part on the VE's testimony, the ALJ determined that, "[c]onsidering the [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform"  (Tr. 27).

Thus, the ALJ found Plaintiff was not under a disability within the meaning of the Social Security Act at any time from Plaintiff's alleged onset date of May 11, 2006 through the date of the decision (Tr. 28).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact,

and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court does not re-weigh the evidence, but determines whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that Plaintiff is not disabled under the Social Security Act. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments. *Bowen v. Yuckert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

**BACKGROUND AND ANALYSIS**

Plaintiff was born on September 22, 1960 (Tr. 32). Thus, he was forty-eight years old at the time of the administrative hearing. Plaintiff testified at the hearing that he completed ninth grade and dropped out of school shortly after he had started tenth grade (Tr. 32). Plaintiff has past relevant work experience as an industrial truck mechanic, a warehouse stacker/loader, a warehouse shift lead man and a shipping clerk (Tr. 41-42, 177). He alleged a disability onset date of May 11, 2006 (Tr. 96-100, 101-104). Plaintiff testified that he stopped working because he injured his back at work in 2006 while he was unloading a trailer and he tried to stop the top box pallet from falling from the trailer (Tr. 35). He further testified that after this incident his leg would go numb and he had continuing back problems that led to his supervisor telling him to "get some help or don't come back" (Tr. 35). In his Disability Report-Adult, Plaintiff also alleged that he has difficulties with carrying items, lifting more than ten pounds, walking up and down the stairs, and getting in and out of vehicles (Tr. 120).

In essence, Plaintiff raises three issues on appeal (P's Brief at 1). First, Plaintiff claims that the ALJ erred in failing to incorporate Plaintiff's moderate social functioning limitations in his residual functional capacity assessment and in the hypothetical question posed to the vocational expert (P's Brief at 1, 10-15). Second, Plaintiff argues the ALJ erred in failing to find his high frequency hearing loss was a severe impairment (P's Brief at 1, 15-17). Third, Plaintiff claims that the Appeals Council erred in failing to remand the case to the ALJ based on new and material evidence (P's Brief at 1, 17-20).

Defendant asserts the Commissioner's decision that Plaintiff could perform limited sedentary work is supported by substantial evidence (D's Brief at 1, 10-21). In particular,

Defendant argues the Plaintiff's assessed RFC is supported by substantial evidence and does account for Plaintiff's moderate social functioning limitations by restricting Plaintiff's exposure to stress in the workplace (D's Brief at 10). Defendant further argues that since Plaintiff did not allege his hearing affected his ability to function, the ALJ had no duty to further investigate Plaintiff's hearing condition at step two (D's Brief at 12-14). With regard to the evidence submitted first to the Appeals Council, Defendant argues the Appeals Council properly declined to review the ALJ's decision because, after considering the new evidence, the AC correctly concluded substantial evidence supported the ALJ's decision (D's Brief at 14-15).

Upon review of the ALJ's decision and the record evidence, the Court finds reversible error in the ALJ's failure to adequately account for Plaintiff's severe mental impairment in Plaintiff's RFC and the hypothetical question posed to the vocational expert. The Court will limit its findings and analysis to this dispositive issue.

As noted earlier, the ALJ in this case found Plaintiff's disorders of the spine, coronary artery disease, history of peripheral neuropathy, morbid obesity and affective disorder were severe impairments (Tr. 23).[3] By definition, a severe impairment is one that significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). Thus, the ALJ found Plaintiff had a severe mental impairment that affected his ability to work.

---

[3]Generally speaking, an affective disorder is a class of mental disorders that are characterized by a disturbance in mood. On-Line Medical Dictionary at http://www.medilexicon.com/medicaldictionary.php (last visited March 23, 2011).

**Plaintiff's Residual Functional Capacity and the ALJ's Hypothetical Questions**

To evaluate a claim of disability based on a mental impairment, the ALJ must follow a special procedure set out at 20 C.F.R. § 404.1520a. Section 404.1520a (b)(2) provides the ALJ must rate the degree of functional limitation resulting from the impairments in accordance with paragraph (c) of that section and must record the findings as set out in paragraph (e) of that section. Sub-paragraph (c)(4) requires the degree of limitation in the functional areas of daily living; social functioning; and concentration, persistence or pace will be rated using a five point scale of: "None, mild, moderate, marked, and extreme" and the degree of limitation in the fourth functional area (episodes of decompensation), be rated using the four-point scale of: "None, one or two, three, four or more." Section 404.1520a (e)(2) provides in pertinent part that "[a]t the administrative law judge hearing [level] . . . the decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section."

In this case, the ALJ found Plaintiff to have the severe impairment of an affective disorder. The effects of an impairment are measured by the limitations to the ability to work. The ALJ must consider a claimant's limitations to the ability to work when assessing the severity of an impairment. *See* 20 C.F.R. §§ 404.1520(c), 404.1521 (limitations from an impairment determine whether it is severe). In accordance with the requirements of 20 C.F.R. § 404.1520a(c)(4), the ALJ found Plaintiff's affective disorder caused mild restrictions in activities of daily living, moderate difficulties in social functioning, mild difficulties in concentration, persistence or pace, and no episodes of decompensation (Tr. 23).

If the ALJ finds a claimant's impairment or combination of impairments to be severe,

then the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 1520(d), 404.1525, 404.1526). In this case, the ALJ found Plaintiff's affective disorder did "not meet or medically equal the criteria of listings 12.04 and 12.06" (Tr. 23). In fact, the ALJ specifically found Plaintiff did not have an affective disorder with the required level of functional limitation under the "B" or "C" criteria of the two referenced mental listings (Tr. 23).

Before proceeding to step four of the sequential evaluation process, the ALJ determined Plaintiff's residual functional capacity (RFC) (Tr. 24). In general, the RFC is an assessment based on all relevant evidence of a plaintiff's remaining ability to do work despite his or her impairments. 20 C.F.R. § 404.1545; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the physicians' evaluations of a plaintiff's condition and the medical consequences thereof. *Id.* If a plaintiff can still do the kind of work he or she did in the past, then the Regulations require that he or she be found not disabled. In evaluating a plaintiff's RFC, the ALJ must consider all of a plaintiff's impairments, including subjective symptoms such as pain.

Here, the ALJ ultimately found Plaintiff had the RFC to perform a range of sedentary work, with additional restrictions (Tr. 24). The ALJ stated Plaintiff "needs to avoid unusual stress" and may only occasionally bend, stoop, kneel, crouch, and crawl (Tr. 24). The ALJ also indicated that Plaintiff can only lift and carry up to ten pounds, needs the option to alternate sitting and standing, must avoid ladders, unprotected heights and operation of heavy moving machinery (Tr. 24).

At the administrative hearing level of a Social Security disability case, the ALJ often

elicits testimony from a vocational expert in order to introduce independent evidence of the existence of work that a claimant could perform with specified vocational characteristics. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002); *Holley v. Chater*, 931 F. Supp. 840, 851 (S.D. Fla. 1996). If the ALJ elects to use VE testimony, the ALJ must pose a hypothetical question that encompasses all of a claimant's severe impairments in order for the VE's testimony to constitute substantial evidence. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985). The ALJ, however, is not required to include in the hypothetical question the non-severe impairments, or the limitations that were properly rejected as unsupported. *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004)*; McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *Loveless v. Massanari,* 136 F.Supp.2d 1245, 1250-51 (M.D. Fla. 2001); *Mullin v. Astrue*, No. 3:07-cv-765-J-JRK, 2008 WL 5412190, *8 (M.D. Fla. Dec. 29, 2008).[4]

At the November 10, 2008 hearing in this case, vocational expert Donna Mancini testified (Tr. 40-44). The VE was present throughout the entire hearing, heard the Plaintiff's testimony, was sworn in prior to giving testimony and testified herself that she had reviewed the record made available to her prior to the hearing (Tr. 31, 40). ALJ Droker asked the VE Mancini to:

> Assume I find that the claimant is 48 years old, has a ninth-grade education. Assume further I find that he can only perform light work and is further limited by the following exertional and non-exertional impairments. He needs a sit/stand option, needs to avoid ladders or unprotected heights, needs to avoid the operation of heavy moving machinery, needs to avoid unusual stress. He can only occasionally bend, crouch, kneel, stoop, squat, or crawl. He has a ten-pound maximum weight lifting.

---

[4]Unpublished opinions are cited only for persuasive authority.

(Tr. 42.)

In response to this hypothetical question, the VE testified Plaintiff would be unable to perform his past relevant work, which she earlier had identified as a forklift mechanic and a shipping clerk (Tr. 41-43).

The ALJ modified the hypothetical question to assume entry level work in which the claimant had no skills or semi-skills at all, but was the age previously described and had the same work experience and education previously described (Tr. 42). The VE was directed to assume further the claimant could perform light work and had the same exertional and non-exertional limitations originally described (Tr. 42). Under this scenario, the VE identified the light exertional jobs of silver wrapper, ticket seller and house sitter, and the sedentary exertional jobs of call out operator and surveillance system monitor as work the claimant could perform (Tr. 43).

The Court notes the ALJ's hypothetical questions to the VE included all of the limitations found in the ALJ's assessment of Plaintiff's RFC (Tr. 24, 42-43); however, Plaintiff does not dispute the consistency between the hypothetical question and the RFC assessment. Plaintiff argues the ALJ's limitation requiring Plaintiff to avoid "unusual stress" is insufficient to account for Plaintiff's moderate difficulties in social functioning that resulted from the severe impairment of an affective disorder (P's Brief at 10-15). As this Court has noted, "when the ALJ relies on the testimony of a VE, 'the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE' rather than the RFC simply cited in the ALJ's decision." *Brunson v. Astrue*, No. 3:09-cv-984-J-MCR, 2011 WL 839366, at *10 (M.D. Fla. Mar. 7, 2011) (quoting *Corbitt v. Astrue*, No. 3:07-CV-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008)). In *Brunson*, the ALJ stated

the hypothetical person needed to "avoid unusual stress" and needed "simple tasks." *Id.* at *11. Thus, the Court found the ALJ did not explicitly or implicitly account for the plaintiff's moderate limitations in maintaining concentration, persistence, or pace. *Id.*

In the recent case of *Winschel v. Commissioner of Social Security*, the Eleventh Circuit weighed in on the adequacy of hypothetical questions posed by administrative law judges to vocational experts when the Psychiatric Review Technique analysis reveals claimants have moderate limitations in an area of functioning. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011). In *Winschel*, the court found limitations to simple, routine tasks or to unskilled work would not, standing alone, typically be sufficient to account for a plaintiff's moderate limitations in concentration, persistence or pace. *Id.* at 1180. This is a fact specific inquiry in which the medical evidence may or may not demonstrate whether generic limitations, such as to unskilled work or to jobs without unusual stress, for example, may sufficiently account for the plaintiff's mental impairments. *Id.* However, it is for the Commissioner, not the courts, to weigh the medical evidence and make the necessary findings. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (stating a court may not decide facts anew, may not reweigh the evidence, and may not substitute its own judgment for that of the Commissioner) (internal citation omitted).

In this case, as in *Winschel,* the ALJ did not indicate whether medical evidence supported finding Plaintiff could perform basic work activities in spite of the moderate limitation in an area of functioning, nor did the ALJ implicitly account for the limitation in his hypothetical to the vocational expert by instructing the VE to fully credit any particular findings or medical evidence related to Plaintiff's severe mental impairment. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d at 1181.

In *Clements v. Astrue*, No. 3:08-cv-65, 2009 WL 260980 (M.D. Fla. Feb. 4, 2009), the Court was faced with a similar issue to that which is before this Court today.[5] In *Clements*, the ALJ found the plaintiff had "moderate restrictions in her activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. *Id.* at *6. In both the plaintiff's RFC and hypothetical question posed to the VE, the ALJ in *Clements* attempted to account for Plaintiff's mental difficulties by precluding Plaintiff from holding occupations which required more than occasional contact with the public. *Id.* The Court remanded the case due to an error in the weight given a treating physician's opinion and on this issue for ALJ to develop a RFC finding reflective of all of the plaintiff's impairments and to pose a hypothetical setting forth the same. *Id.* The Court found it unclear if the stated mental limitation on the plaintiff's ability to work sufficiently encompassed all the impairments recognized by the ALJ. *Id.*[6]

As noted by the Commissioner, the four functional areas summarized by application of the Psychiatric Review Technique are broad categories to assist the ALJ in determining

---

[5]Although it is not clear from the opinion which of the plaintiff's mental impairments were found to be severe, the plaintiff alleged inability to work "based on major depression and schizoaffective disorder." *Clements*, 2009 WL 260980 at *1.

[6]In another somewhat similar case, *Milenbaugh v. Barnhart*, Case No. 3:05-cv-83-J-MCR, (M.D. Fla. Mar. 28, 2006) (unpublished decision), the Court was unclear how the ALJ determined the plaintiff's severe mental impairments required her to "simply avoid unusual stress" and remanded the ALJ's decision for further proceedings. In *Milenbaugh*, the plaintiff was found to have severe impairments that included, among other things, anxiety and affective disorder. *Id.* On the facts presented, the Court in *Milenbaugh* questioned whether the assessed RFC, which included the "avoidance of unusual stress," adequately encompassed the plaintiff's two severe mental impairments of anxiety and affective disorder that were found to cause "moderate difficulties in concentration, persistence or pace" and mild difficulties in social functioning and activities of daily living. *Id.*

at steps two and three which of the claimant's mental impairments are severe and from which the ALJ must determine the mental functional limitations on the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520a(c); SSR 96-8p, 1996 WL 374184, *4 (S.S.A. Jul. 2, 1996). Determination of the functional limitations is a "highly individualized" and fact specific determination. *Id.* Work related mental activities include the ability and aptitude to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting. 20 C.F.R. § 404.1521(b). The category of social functioning refers to the capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

Here, as in *Clements*, the ALJ failed to make findings sufficient for the Court to ascertain whether the mental limitation included in the RFC and the hypothetical questions adequately encompassed Plaintiff's severe mental impairment. Under the guidance of *Winschel*, the ALJ is most certainly required to account for Plaintiff's moderate limitations in social functioning when stating a hypothetical question for the VE's input.[7] Here, the ALJ relied on testimony from the VE regarding other jobs in the economy that a person with Plaintiff's impairments could perform. Yet, that testimony was based on hypothetical questions that were not comprised of all of Plaintiff's impairments; specifically how his severe affective disorder results in moderate limitations in social functioning. Thus, the

---

[7]The Court recognizes that the *Winschel* opinion was issued after the parties filed their briefs in this case; however, it is a published opinion and therefore controlling law in the Eleventh Circuit.

ALJ's decision is not supported by substantial evidence and remand is necessary to correct this flaw.

## CONCLUSION

For the reasons stated herein, the decision of the Commissioner is **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g). The case is **REMANDED** for additional proceedings consistent with this Order and Opinion. On remand, the Commissioner is instructed to: (1) appropriately consider and weigh the new evidence submitted to the Appeals Council after the ALJ's decision was rendered;[8] (2) reassess Plaintiff's residual functional capacity in light of this Order and Opinion and the new evidence; (3) pose a hypothetical question to the VE that specifically accounts for Plaintiff's mental limitations; and, (4) conduct any other proceedings deemed appropriate.

**Directions as to Judgment**

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file. The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) **must be filed within thirty (30) days** of the Commissioner's final decision to award benefits. *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1278 n. 2 (11th Cir. 2006) (recognizing under Fed. R. Civ. P.

---

[8] Consideration of the new evidence entered into the record by the AC would include, of course, the Hearing Residual Functional Capacity Questionnaire and the Audiological Evaluation from February 2009 (Tr. 493-96). As the Court found remand of this case was necessary on the issue discussed herein, the Court has not addressed Plaintiff's contention that his "hearing loss in the left ear was 96%" (P's Brief at 10). The Court would respectfully request the ALJ on remand clarify whether the test results and the hearing RFC opinion of Dr. Eileen Raynor, M.D., reflect a 96% loss of hearing. Dr. Raynor actually reported "HF SN HL AS, 96% discrim" and "Mild HF SN HL AD, 100% disc." (Tr. 493).

54(d)(2)(B) the district court may enlarge the time for any attorney to petition for fees and suggesting time be stated in the judgment); *compare with* Fed. R. Civ. P. 54(d)(2)(B) and M.D. Fla. Loc. R. 4.18(a) (both requiring that unless a statute **or court order** provides otherwise, any motion for attorney fees must be filed no later than fourteen (14) days after entry of judgment) (emphasis added).

This Order does not, however, extend the time limits for filing a motion for attorney fees under the Equal Access to Justice Act.

**DONE AND ORDERED** at Jacksonville, Florida this 28th day of March, 2011.

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to all counsel of record